# UNITED STATES DISTRICT COURT
for the
**EASTERN DISTRICT OF WISCONSIN**

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL USDT HELD ON DEPOSIT IN ADDRESS
0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e
MAINTAINED BY TETHER LIMITED INCORPORATED

Case Number: 24-946M(NJ)

## WARRANT TO SEIZE PROPERTY SUBJECT TO FORFEITURE

TO:     **KELLEN J. WILLIAMS, a Special Agent with the Drug Enforcement Administration, and any Authorized Officer of the United States**.

An application by a federal law enforcement officer or an attorney for the government requests that certain property be seized as being subject to forfeiture to the United States of America.  The property is described as follows:

All USDT held on deposit in address 0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e maintained by Tether Limited Incorporated

I find that the affidavit and any recorded testimony establish probable cause to seize the property.

 **YOU ARE HEREBY COMMANDED** to search on or before   12/27/2024                    , 2024
*(not to exceed 14 days)*

❑ in the daytime – 6:00 a.m. to 10:00 p.m.        xx❑ at any time in the day or night, as reasonable cause has been established.

Unless delayed notice is authorized below, you must also give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

An officer present during the execution of the warrant must prepare, as required by law, an inventory of any property seized and the officer executing the warrant must promptly return this warrant and a copy of the inventory to United States Magistrate Judge Nancy Joseph.

        ❑ I find that immediate notification may have an adverse result listed in 18 U.S.C. §2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person, who, or whose property, will be searched or seized *(check the appropriate box)*     ❑ for _____ days. *(not to exceed 30)*
❑ until, the facts justifying, the later specific date of _____

Date and time issued  12/13/    , 2024;    12:41p.m
.

_____
*Judge's signature*

City and state: <u>Milwaukee, Wisconsin</u>

THE HONORABLE NANCY JOSEPH
United States Magistrate Judge
*Name & Title of Judicial Officer*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|
| | | |

Inventory made in the presence of:

Inventory of the property taken:

## Certification

    I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF WISCONSIN

In the Matter of the Seizure of
(Address or brief description of property or premises to be seized)

ALL USDT HELD ON DEPOSIT IN ADDRESS            Case Number: 24-946M(NJ)
0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e
MAINTAINED BY TETHER LIMITED INCORPORATED

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, Kellen J. Williams, being duly sworn depose and say:

I am a Special Agent with the Drug Enforcement Administration, and have reason to believe that in the British Virgin Islands there is now certain property, namely, all USDT held on deposit in address 0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e maintained by Tether Limited Incorporated, (1) that is civilly forfeitable under 21 U.S.C. § 881(a)(6) and criminally forfeitable under 21 U.S.C. § 853 as funds that constitute proceeds of trafficking in controlled substances or were used or intended to be used to facilitate the commission of a controlled substances offense, in violation of 21 U.S.C. § 841(a)(1); and (2) that is civilly forfeitable under 18 U.S.C. §§ 981(a)(1)(A) and 984 and criminally forfeitable under 18 U.S.C. § 982(a)(1) as funds involved in, or traceable to funds involved in, money laundering transactions and unlicensed money transmitting in violation of 18 U.S.C. §§ 1956, 1957, and 1960, and which property is therefore also subject to seizure for purposes of civil forfeiture under 18 U.S.C. § 981(b), and for purposes of criminal forfeiture under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

The application is based on these facts:

       ✓ Continued on the attached sheet.
       ❑ Delayed notice of _____ days (give exact ending date if more than 30 days:_____ is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

KELLEN WILLIAMS     Digitally signed by KELLEN WILLIAMS
                    Date: 2024.12.12 14:40:17 -06'00'

Signature of Affiant
Kellen J. Williams, DEA

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone and email.

Date and time issued 12/13/2024 @ 12:41 p.m._____

at Milwaukee, Wisconsin
City and State

Nancy Joseph, U.S. Magistrate Judge
Name & Title of Judicial Officer

Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEIZURE WARRANT

I, Kellen J. Williams, being duly sworn, do hereby depose and state:

## I. BACKGROUND, TRAINING, AND EXPERIENCE

1. I am a Special Agent with the Drug Enforcement Administration (DEA), and I am currently employed as a DEA Special Agent, and have been since September 2012. I am currently assigned to the Milwaukee District Office, Enforcement Group 61, which is located in the Eastern District of Wisconsin. Over the course of my career, I have received specialized training about drug trafficking and money laundering from the U.S. Department of Justice. My career has included long terms of special investigative assignments in drug enforcement and money laundering. I have conducted numerous drug conspiracy and money laundering investigations in the United States and abroad.

2. I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure 41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have participated in numerous investigations related to illegal drug trafficking, among other things, have conducted or participated in surveillances, the execution of search warrants, and debriefings of informants related to drug trafficking and money laundering. I have drafted affidavits for search warrants including tracking of vehicles, cellular phones, and searches of residences and electronic devices. I also consult with other agents with extensive experience in drug trafficking investigations. As a result, I am familiar with common practices to promote and facilitate drug trafficking.

3. Based on my training and experience, I am aware of the following:

> A. Drug trafficking organizations (DTOs) generate large amounts of cash proceeds in the U.S. and elsewhere. In order to repatriate their cash proceeds from the U.S. and other countries back to their country of origin where they can be used by the DTO members, DTOs often employ professional money launderers. For a fee, professional money launderers provide the DTO with currency in the DTO's native country in exchange for bulk currency in the country where the DTO's narcotics are distributed.

B. Professional money launderers utilize a variety of methods to accomplish their goals including trade-based money laundering, bulk currency smuggling and virtual currency trading to achieve their goals.

C. Virtual currency, also known as cryptocurrency, is generally defined as an electronically sourced unit of value that can be purchased with, sold for, or used as a substitute for fiat currency (i.e., currency created and regulated by a government). Cryptocurrency is not issued by any government, bank, or (with limited exceptions) companies. It is instead generated and controlled through computer software operating on a decentralized peer-to-peer network. Cryptocurrency can be quickly transmitted directly between parties and across national borders, without the need for a facilitating third party like a traditional financial institution. Many cryptocurrencies, including Bitcoin and Tether, operate via a "blockchain," a record (or ledger) of every transaction ever conducted that is distributed throughout the network. The blockchain will not list the names of parties to the transaction but will list the date and time of the transaction, the originating and receiving public address, and how much cryptocurrency was transferred.

D. For example, Bitcoin is a type of virtual currency, circulated over the Internet as a form of value. As stated on its website, "Bitcoin uses peer-to-peer technology to operate with no central authority or banks; managing transactions and the issuing of bitcoins is carried out collectively by the network." See https://bitcoin.org/en/. The website (at https://bitcoin.org/en/how-it-works) further explains the ease of getting started with Bitcoin:

> As a new user, you can get started with Bitcoin without understanding the technical details. Once you have installed a Bitcoin wallet on your computer or mobile phone, it will generate your first Bitcoin address and you can create more whenever you need one. You can disclose your addresses to your friends so that they can pay you or vice versa. In fact, this is pretty similar to how email works, except that Bitcoin addresses should be used only once.

E. The technology underlying Bitcoin utilizes "public key cryptography," a mathematical algorithm that generates a pair of unique, corresponding keys: the "public key" and the "private key." These components form the "public address," which is used to send and receive Bitcoin and can be shared with whomever wants to send Bitcoin to that address. A Bitcoin address is somewhat analogous to a bank account number and is represented as a 26-to-35-character-long case-sensitive string of letters and numbers. Bitcoin are sent to and received from Bitcoin "addresses." Individual cryptocurrency addresses are controlled through the utilization of a unique private key, which can be thought of as a password used to access the address. The private key limits access to only the owner of the cryptocurrency address.

F. A Bitcoin public address has been compared to the mailing address of a locked post office (P.O.) box. Whomever the P.O. box belongs to can share that mailing address freely. For example, a company can advertise their P.O. box's mailing address on invoices, so customers know where to send their envelopes full of cash. The company

2

need not worry that customers could then open the P.O. box (and take the cash inside), because that would require the means to unlock the box, such as a physical key. A private key functions like that physical key: whomever controls it controls all funds that have been deposited into the associated public address.

G. A cryptocurrency wallet may contain multiple cryptocurrency addresses. Ownership of a cryptocurrency wallet denotes stewardship of the multiple addresses therein.

H. Wallets can be backed up in a number of ways. The digital files associated with the wallet might be stored locally on the user's computer or stored remotely in the cloud. Alternatively, a user can generate a "recovery seed," a pseudo-random collection of approximately 12-24 natural language words from which wallet software can mathematically derive all of their public addresses and private keys, allowing the user's wallet to be recreated on any computer or smartphone. A recovery seed can be stored, for example, in a digital text file on a computer or smartphone or written on a piece of paper. If a user retains a copy of their recovery seed, they retain control of their cryptocurrency, regardless of any devices law enforcement decides to seize, unless and until the latter are able to move the funds to a new, government-controlled wallet.

I. Cryptocurrency can also be stored on a hard wallet, a device like a USB thumb drive that keeps all the accounts off-line. This helps prevent hackers from getting to the cryptocurrency. Hard wallets work by storing the private key, keeping it off the Internet and therefore mitigating the risks of cryptocurrency being compromised in an online attack. A hard wallet can be used to conduct a transaction when it is plugged into a computer, unlocked with a PIN or passphrase, and then connected to the internet to initiate the sending or receipt of funds. If a hard wallet is lost or stolen, the private key can be regenerated using a recovery seed. This recovery seed enables the user to move the private keys to a new hard wallet.

J. It is possible using the blockchain to trace funds forwards and backwards from a single address or a single transaction, not unlike the manner in which investigators trace the movement of funds in fiat currencies.

K. Despite the anonymized nature of a cryptocurrency blockchain, information identifying the sender, or the recipient of a transaction can be obtained from payment processors or vendors. This information helps investigators identify payment streams – a single flow of funds over time – believed to belong to the same pool of funds controlled by individuals.

L. Bad actors sometimes utilize services to further obfuscate the movement of funds. A cryptocurrency tumbler or cryptocurrency mixing service is a service that mixes cryptocurrency funds with funds belonging to other individuals, so as to obscure the trail back to the fund's original source. When cryptocurrencies are tumbled or mixed, the mixer will take the cryptocurrency from several different users and run them through an algorithm that mixes those funds together, and then redistributes them to the users. For example, one hundred users send 0.1 bitcoin to a new address, aggregating those funds

into one big transaction. The funds are subsequently distributed among the hundred users, each of them receiving 0.1 "clean" bitcoin. As a result, tumbled or mixed cryptocurrencies lose many of the attributes that make cryptocurrencies traceable.

## II. PURPOSE OF AFFIDAVIT AND PROPERTY TO BE SEIZED

4. For the reasons set forth below, I submit this affidavit in support of an application for a seizure warrant to seize all USDT[1] held on deposit in address 0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e ("**Target Address**") maintained by Tether Limited Incorporated. I submit that the funds held in the **Target Address** are:

> a. Funds traceable to, and are therefore proceeds of, distribution of controlled substances, committed in violation of 21 U.S.C. § 841, and therefore are subject to civil forfeiture under 21 U.S.C. § 881(a)(6), and subject to criminal forfeiture under 21 U.S.C. § 853(a);
>
> b. Funds involved in, or traceable to funds involved in, unlicensed money transmitting, committed in violation of 18 U.S.C. § 1960, and therefore are subject to civil forfeiture under 18 U.S.C. § 981(a)(1)(A), and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1);
>
> c. Funds involved in, or traceable to funds involved in, money laundering offenses, committed in violation of 18 U.S.C. §§ 1956 and 1957, and therefore are subject to civil forfeiture under 18 U.S.C. §§ 981(a)(1)(A) and 984, and subject to criminal forfeiture under 18 U.S.C. § 982(a)(1); and
>
> d. Subject to seizure via a civil seizure warrant under 18 U.S.C. § 981(b)(2) and via a criminal seizure warrant under 18 U.S.C. § 982(b)(1) and 21 U.S.C. § 853(f).

5. This warrant request is connected with an ongoing criminal and financial investigation in the Eastern District of Wisconsin regarding Oscar INZUNZA-AYALA, Luis DIAZ-AGUIRRE, Eleazar INZUNZA-RAMIREZ, and others. For the reasons discussed below, case agents believe that

---

[1] USDT (also known as Tether) is a stable coin cryptocurrency with a value meant to mirror the value of the U.S. dollar. USDT tokens are backed by offshore banks. Offshore banks offer fewer charges for operation and tax benefits, but they aren't always fully secure like the FDIC-insured U.S. banks.

4

INZUNZA-AYALA, DIAZ-AGUIRRE, and INZUNZA-RAMIREZ are Mexican money launders specializing in cryptocurrency transactions.

### III. PROBABLE CAUSE

### A. Money Laundering Investigation of INZUNZA-AYALA

6. Information contained in this affidavit has been compiled through my own investigative efforts as well as the investigative efforts and knowledge from other law enforcement officers and intelligence analysts. This affidavit is not all-inclusive, and facts contained in this affidavit are believed to sufficiently establish probable cause to seize the **Target Address**.

7. Since November 2020, the DEA Milwaukee District Office has been investigating several money laundering brokers from Mexico and Colombia, responsible for laundering suspected drug proceeds in the United States back to source countries and elsewhere, mainly via cryptocurrency. As part of this investigation, case agents developed CS-1, who was capable of receiving contracts from Mexico-based money brokers.

8. CS-1 has worked with DEA since 2022. Over the course of CS-1's history of cooperating with the DEA, the information provided by CS-1 has produced a large seizure of suspected drug proceeds. As detailed below, investigators have also independently corroborated the information provided by CS-1. As a result, investigators have deemed CS-1's information credible and reliable. CS-1 has no criminal history in the United States and is currently working for monetary compensation.

9. CS-1 was able to insert himself/herself as a person capable of fulfilling money pickup contracts in the United States, converting the bulk currency to cryptocurrency, and delivering the cryptocurrency to its desired location. Beginning in August 2023, CS-1 began to receive money pick-

up contracts[2] from "El Guero," a Guadalajara, Mexico-based money broker who was later identified as Oscar INZUNZA-AYALA.

10.     Between August 2023 and November 2023, at the direction of case agents, CS-1 accepted four successful money laundering contracts totaling approximately $489,970 in U.S. currency—suspected drug proceeds—in Boston, Massachusetts; Newark, New Jersey; and Raleigh, North Carolina.  In each of these instances, INZUNZA-AYALA coordinated the pickup and provided CS-1 with a cryptocurrency address to send USDT.  During these transactions, case agents, by way of CS-1, charged a 3% commission fee.

11.     Based on my training and experience as well as knowledge and information garnered from other money launderers in this case and similar cases, I know cryptocurrency transactions are often utilized to launder the proceeds derived from narcotic trafficking.  More specifically, narcotics traffickers in source countries (e.g., Mexico and Colombia) provide narcotics to consumer countries (e.g., the United States).  The bulk currency proceeds derived from the sale of these narcotics are then returned to the narcotics traffickers within the source countries utilizing various methods, including the use of cryptocurrencies.  In this case, the narcotics traffickers often contact brokers, or professional money launderers, who are responsible for collecting the bulk currency within the consumer countries and depositing the currency into the banking system.  The brokers often then pay out the narcotics traffickers in fiat currency within the source countries, minus a commission, and sell the cryptocurrency to a separate "crypto" broker.  The commission fee is generally between 3% - 5%. This crypto broker may then conduct a series of cryptocurrency transactions across multiple cryptocurrency exchanges utilizing an array of methods (e.g., cryptocurrency scrambler) in an effort

---

2 A money pick-up occurs when, in this case, a Mexico-based money broker offers a contract to pick-up suspected drug proceeds in the United States, minus a commission, convert it to cryptocurrency, and transfer to the money broker.

6

to obfuscate the true origin of the money.  These crypto brokers then often sell the cryptocurrency in the "black market" in exchange for various fiat currencies.

**B.    Money Pickup in Boston, Massachusetts**

12.    In August 2023, INZUNZA-AYALA offered a money pickup contract to CS-1 to pick up $200,000 of suspected drug proceeds in Boston, Massachusetts, convert the U.S. currency to USDT, and transfer it to a USDT address provided by INZUNZA-AYALA.  At the direction of case agents, CS-1 accepted the contract and provided INZUNZA-AYALA with a phone number used by an undercover (UC) agent and a dollar bill serial code.

13.    On August 31, 2023, DEA New England agents established surveillance at an agreed upon location in Dorchester, Massachusetts.  Surveillance observed a Hispanic male, later identified as Julio Cesar TERRERO, exit his vehicle and provide the UC with a bag later determined to contain $157,500 U.S. currency.  On this same date, the U.S. currency received from TERRREO was deposited into a DEA undercover account and converted to USDT.

14.    On August 31, 2023, at 19:11 UTC, case agents sent 151,204.484989 USDT to wallet address 0x24d47d3816ab5edfb695bf1f10570d4ba890a136, a deposit address provided to CS-1 by INZUNZA-AYALA.  Following the undercover transfer to 0x24d47d3816ab5edfb695bf1f10570d4ba890a136, 148,050 USDT was sent from 0x24d47d3816ab5edfb695bf1f10570d4ba890a136 to 0x1faace37ce08711f4ee58cbd708edb9bff6a400d (Related Address 1), on August 31, 2023, at 19:16 UTC.  On August 31, 2023, at 20:17 UTC, 144,900 USDT was transferred from Related Address 1 to 0x7db436860f4146036f2716883c850d7519a795b1 (Related Address 2).

7



15. 0x7db436860f4146036f2716883c850d7519a795b1 (Related Address 2) is categorized as an unhosted wallet, meaning it is not connected to a virtual currency exchange that would require Know Your Customer (KYC) information. Based on training and experience, and the investigation to date, case agents are aware that money launderers commonly use unhosted wallets to remain anonymous and avoid law enforcement detection. With an unhosted wallet, a user needs "gas" to send USDT via the Ethereum or Tron network. Gas is the fee required to successfully conduct a transaction or execute a contract on the Ethereum or Tron blockchain platform. By following the trail related to "gas fees," case agents can connect individuals associated with the unhosted wallet, as "gas fees" can generally be traced to a virtual currency exchange that requires KYC.

16. Public blockchain records show that Related Address 2 received its first incoming ETH[3] transfer (gas fee) of 0.0090814 ETH on May 6, 2022, from 0x6aa369e4bd320e6cd786a4217c0357742601f095. Public blockchain records also show that 0x6aa369e4bd320e6cd786a4217c0357742601f095 received its first incoming ETH transfer of 0.0984 ETH (gas fee) on May 5, 2022, at 01:02 UTC from Binance. On September 1, 2023, case agents sent an Administrative Subpoena to Binance for information related to the ETH transfer to 0x6aa369e4bd320e6cd786a4217c0357742601f095. On September 2, 2023, case agents received

---

3 ETH is used to pay gas fees on the Ethereum network.

a response from Binance that indicated that the transfer of 0.0984 ETH had originated from Binance User ID 27785235. Binance records show this account is owned by Wim Ken AALTEN. AALTEN possesses Netherlands passport # BEP509600 and listed a residential address in Spain. AALTEN's email address was identified as aalten.wk@gmail.com. A review of AALTEN's IP address history revealed he primarily logs in to his Binance account from Guadalajara, Mexico and Mexico City, Mexico. Based upon "gas fee" analysis, case agents believe AALTEN is associated with the unhosted wallet 0x6aa369e4bd320e6cd786a4217c0357742601f095.

17. Per DEA reporting, since at least 2013, Wim Ken AALTEN is a source of supply for multi-hundred kilogram quantities of cocaine and facilitates the transportation of narcotics between Mexico, Colombia, and Europe. In August 2024, a DEA source reported AALTEN is a heavy hitter in drug trafficking in Guadalajara, Mexico. The source reported AALTEN is a close associate of Sinaloa Cartel leader in the Guadalajara area and has been spotted with Sinaloa members at their ranches in Guadalajara.

18. Following the receipt of 144,900 USDT, two transfers were made from Related Address 2: 90,019.800931 USDT was sent to 0xd66d792c296dde1994bd8516e256fae446620cdd, on August 31, 2023, at 20:52 UTC; and 54,016.679098 USDT was sent to 0x228f28f5ef20174883693b7ce41f6690bc271b8f on August 31, 2023, at 23:13 UTC. On September 1, 2023, case agents sent an Administrative Subpoena to Binance requesting information about 0xd66d792c296dde1994bd8516e256fae446620cdd. On September 2, 2023, case agents received a response from Binance which indicated that 0xd66d792c296dde1994bd8516e256fae446620cdd is a deposit address associated with Binance User ID 751723877. Binance records show this account is owned by Rocio Anahi MADRIGAL-SALAZAR. MADRIGAL-SALAZAR possesses a Mexican voter identification card and listed a residential address in Culiacan, Sinaloa, Mexico. MADRIGAL-

9

SALAZAR's email address was identified as anahi.madrigal97@gmail.com. A review of MADRIGAL-SALAZAR's IP address history revealed she logs in to her Binance account from Tijuana, Mexico.

19. Following the receipt of 90,019.800931 USDT, on August 31, 2023, at 21:23 UTC, MADRIGAL-SALAZAR sent 90,019.102991 USDT, on the TRON network, to address TBHcg8YGAFsqRwPtxGyDRQDzDxDrHHynpy. On September 1, 2023, at 00:33 UTC, TBHcg8YGAFsqRwPtxGyDRQDzDxDrHHynpy sent 90,000 USDT to address TCCR8NhPV33KBXn3yh7mt7Tkog6w8sZQZH. On September 4, 2023, case agents sent an Administrative Subpoena to Binance for information related to TCCR8NhPV33KBXn3yh7mt7Tkog6w8sZQZH. On September 4, 2023, case agents received a response from Binance which indicated that TCCR8NhPV33KBXn3yh7mt7Tkog6w8sZQZH is a deposit address associated with Binance User ID 745265562. Binance records show this account is owned by Peng XIONG. XIONG possesses a resident identity card from the People's Republic of China and listed a mobile phone number of 86-5083392665. XIONG's email address was listed as eve@hkbestchemical.com. A review of XIONG's IP address history revealed he primarily logs in to his Binance account from Zhengzhou, China. Based on training and experience, and the investigation to date, case agents believe the last transaction was to a chemical precursor company located in China. Per DEA reporting, Hong Kong Best Chemical Co LTD is involved in the trafficking of precursor chemicals that are used to manufacture clandestine fentanyl and other narcotics.



### C. Additional Money Pickup in Boston, Massachusetts

20. Beginning in December 2022, CS-1 began to receive money pick-up contracts from "Fer", a Guadalajara, Mexico-based money broker who was later identified as Luis Fernando DIAZ-AGUIRRE. Between December 2022 and August 2023, at the direction of case agents, CS-1 accepted twenty-three successful money laundering contracts totaling approximately $2,757,332 U.S. currency of suspected drug proceeds in Colorado Springs, Colorado; Atlanta, Georgia; Philadelphia, Pennsylvania; Oklahoma City, Oklahoma; Chicago, Illinois; St. Louis, Missouri; New York, New York; Boston, Massachusetts; Detroit, Michigan; and Denver, Colorado. In each of these instances, DIAZ-AGUIRRE coordinated the pickup and provided CS-1 with a cryptocurrency address to send USDT. During these transactions, case agents, by way of CS-1, have charged a 3% commission fee.

21. As a result of money pickups provided by DIAZ-AGUIRRE, case agents have seized numerous amounts of cash, cocaine, methamphetamine, fentanyl and marijuana. For example, in June 2023, DIAZ-AGUIRRE offered CS-1 a contract to pick up approximately $150,000 in Pittsburgh, Pennsylvania. On June 27, 2023, DEA Pittsburgh conducted the money pickup and received $149,745.00 U.S. currency from Tywan STAPLES and subsequently deposited the U.S.

11

currency into the DEA Milwaukee undercover account. DEA Pittsburgh was able to identify STAPLES through surveillance and revealed he was previously arrested and prosecuted on a DEA Pittsburgh cocaine investigation, receiving a sentence of 120 months. During his previous DEA Pittsburgh investigation, STAPLES shot at the SWAT team as they were approaching his residence to serve the search and arrest warrants. On July 27, 2023, DEA Pittsburgh served two federal search warrants at the residence of STAPLES and a stash location. DEA Pittsburgh arrested STAPLES and seized 30 grams of cocaine, 36 pounds of marijuana, $317,750.00 USC, and a money counter from his residence.

22. In August 2023, DIAZ-AGUIRRE offered a money pickup contract to CS-1 to pick up $200,000 of suspected drug proceeds in Boston, Massachusetts, convert the U.S. currency to USDT, and transfer it to a USDT address provided by DIAZ-AGUIRRE. At the direction of case agents, CS-1 accepted the contract and provided DIAZ-AGUIRRE with a phone number used by an undercover (UC) agent and a dollar bill serial code.

23. On August 2, 2023, DEA New England agents established surveillance at an agreed upon location in Methuen, Massachusetts. Surveillance observed a Hispanic female, later identified as Carmen ORTEGA-PIZARRO, in the parking lot. The UC entered ORTEGA-PIZARRO's vehicle and received a duffle bag directly from ORTEGA-PIZARRO later determined to contain $267,770 U.S. currency. On this same date, the U.S. currency received from ORTEGA-PIZARRO was subsequently deposited into a DEA undercover account and converted to USDT.

24. On August 2, 2023, at 23:14 UTC, case agents sent 259,888.115005 USDT to wallet address 0xE9B3a8029A836f8D47357DD064d9863677F6d70b, the address provided to CS-1 by DIAZ-AGUIRRE. Following the undercover transfer to 0xE9B3a8029A836f8D47357DD064d9863677F6d70b, 252,373 USDT was sent

12

from 0xE9B3a8029A836f8D47357DD064d9863677F6d70b

to 0x4755e3d91ed0deaf075414c737dde1f4d9087e53, on August 2, 2023, at 23:31 UTC.  On August 3 & 4, 2023, the funds were split up into three transactions and sent to the following addresses:

- 102,850 USDT on August 3, 2023, at 18:05 UTC to 0x1faace37ce08711f4ee58cbd708edb9bff6a400d (Related Address 1);

- 95,000 USDT on August 3, 2023, at 21:09 UTC to TAzsQ9Gx8eqFNFSKbeXrbi45CuVPHzA8wr; and

- 50,000 USDT on August 4, 2023, at 16:24 UTC to 0x1faace37ce08711f4ee58cbd708edb9bff6a400d (Related Address 1).

0x1faace37ce08711f4ee58cbd708edb9bff6a400d (Related Address 1) then made three outgoing transfers, all to 0x7db436860f4146036f2716883c850d7519a795b1 (Related Address 2).

- 102,000 USDT on August 3, 2023, at 20:59 UTC;

- 50,000 USDT on August 4, 2023, at 19:57 UTC; and

- An additional 21,622 USDT on August 12, 2023, 1:45 UTC.

Deposit addresses 0x1faace37ce08711f4ee58cbd708edb9bff6a400d (Related Address 1) and 0x7db436860f4146036f2716883c850d7519a795b1 (Related Address 2) were both part of the tracing of cryptocurrency from the other Boston, Massachusetts, pickup in August 2023, brokered by INZUNZA-AYALA  referenced above.

13



25. On August 15, 2023, at 12:24 UTC, 0x7db436860f4146036f2716883c850d7519a795b1 (Related Address 2) sent 170,164.57698 USDT to 0x3ab31e1f0caec05b67767bb0907c77855ecdb39a.

0x3ab31e1f0caec05b67767bb0907c77855ecdb39a held on to the funds until February 19, 2024, when it sent 170,164.57698 USDT to 0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e, the **Target Address.**



### D. The Target Address

26. The **Target Address**, 0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e, is an unhosted wallet. Public blockchain records show that the **Target Address** received its first incoming ETH transfer (gas fee) of 0.05987341 ETH on February 19, 2024, from 0x3ab31e1f0caec05b67767bb0907c77855ecdb39a, the same address that sent the 170,164.57698 USDT. 0x3ab31e1f0caec05b67767bb0907c77855ecdb39a is also an unhosted

14

wals, currently with a zero balance. Analysis of the transaction history of 0x3ab31e1f0caec05b67767bb0907c77855ecdb39a revealed that, other than the 170,164.57698 USDT, it only received a small amount of Ethereum, which it used for gas fees and sent the remaining Ethereum to the **Target Address**. Based on training and experience, and the investigation to date, case agents believe the same person, or group of persons, control both 0x3ab31e1f0caec05b67767bb0907c77855ecdb39a and the **Target Address**.



27. The first large incoming transaction into the **Target Address** was a transfer of 1,577,453 USDT on February 19, 2024, at 12:38 UTC, from 0x40e8042be3da3c9c5bdd853e11fcfadfd5a0a0fa. Approximately six minutes later, at 12:44 UTC, the **Target Address** received the 170,164.57698 USDT from 0x3ab31e1f0caec05b67767bb0907c77855ecdb39a. The **Target Address** maintained a balance of approximately 1,747,717 USDT until March 11, 2024, at 9:28 UTC, when it sent 666 USDT to 0x4e6f8674bba41f2ec9f3fe2ac9db416012700877, followed by 623,700 USDT at 23:18

15

UTC to 0x4e6f8674bba41f2ec9f3fe2ac9db416012700877. To date, the only withdrawals from the **Target Address** are those two transactions.

28. Case agents analyzed 0x4e6f8674bba41f2ec9f3fe2ac9db416012700877 and found the first incoming gas fees was a transfer of 0.013117 ETH on March 23, 2022, at 17:58 UTC, from an address associated with Binance. On November 20, 2024, case agents sent an Administrative Subpoena to Binance for information related to the transfer of 0.013117 ETH on March 23, 2022. On November 20, 2024, case agents received a response from Binance which indicated that the transfer of 0.013117 ETH on March 23, 2022, was sent from Binance User ID 210271851. Binance records show this account is owned by Eleazar INZUNZA-RAMIREZ. INZUNZA-RAMIREZ possesses a Mexico Voter Card and listed a mobile phone number of 52-6672431610. INZUNZA-RAMIREZ's email address was listed as elea.a3rios@hotmail.com. A review of INZUNZA-RAMIREZ's IP address history revealed he primarily logs in to his Binance account from Culiacan, Mexico. A further review of INZUNZA-RAMIREZ's Binance account revealed he sent additional gas fees to 0x4e6f8674bba41f2ec9f3fe2ac9db416012700877 on three other occasions and received six incoming USDT transfers from 0x4e6f8674bba41f2ec9f3fe2ac9db416012700877 totaling 418,213 USDT between April 4, 2022, and January 1, 2024.

29. Further analysis of INZUNZA-RAMIREZ's Binance account revealed that on August 21, 2023, at 23:43 UTC, INZUNZA-RAMIREZ sent .382297 BTC to Binance account 745265562, belonging to Peng XIONG with email address eve@hkbestchemical.com, a chemical precursor company discussed above. On September 12, 2023, at 19:21 UTC, INZUNZA-RAMIREZ sent .39845608 BTC to Binance account 745265562, belonging to Peng XIONG with email address eve@hkbestchemical.com.

16

30. Per DEA reporting, INZUNZA-RAMIREZ has been identified as a Sinaloa-based financial broker connected to multiple DEA investigations. INZUNZA-RAMIREZ has been laundering narcotics proceeds via cryptocurrency and has been conducting purchases with multiple Chinese chemical companies.

31. Based on training and experience, and the investigation to date, case agents believe the **Target Address** is being controlled by INZUNZA-RAMIREZ and/or his associates. Case agents believe the **Target Address** is being used to facilitate the movement of illegal proceeds derived from the sale of narcotics and to obfuscate the true origin of the funds. Ultimately, case agents believe those illegal proceeds are transferred, in part, to Chinese chemical companies that manufacture precursor chemicals used in the production of narcotics.

## SEIZURE PROCEDURE FOR THE TARGET ADDRESS

32. Should this seizure warrant be granted, law enforcement intends to work with Tether to seize the funds associated with the **Target Address**. In sum, the accompanying warrant would be transmitted to Tether, at which time Tether would "burn" (i.e., destroy) the address at issue (and by extension the USDT tokens associated with it). Tether would then reissue the equivalent amount of USDT tokens associated with the **Target Address** and transfer that equivalent amount of USDT to a government-controlled wallet. The seized currency will remain in the custody of the U.S. government during the entire pendency of the forfeiture proceedings, to ensure that access to, or manipulation of, the forfeitable property cannot be made absent court order or, if forfeited to the United States, without prior consultation by the United States.

## CONCLUSION

33. Based upon all of the foregoing, there is probable cause to establish that the **Target Address**, maintained by Tether Limited Incorporated ("Tether"), received proceeds of the

17

distribution and sale of narcotics and the **Target Address** is property traceable to narcotics trafficking, in violation of Title 21, United States Code, Section 841, et. seq., and/or the **Target Address** was used to commit concealment money laundering transactions and was involved in unlicensed money transmitting, in violation of Title 18, United States Code, Section 1956 and Section 1960, respectively, and that the USDT held in the **Target Address** was involved in the money laundering and unlicensed money transmitting conduct.

34. Title 18, United States Code, Section 1956 makes it unlawful, in part, to conduct a financial transaction, knowing that the property involved in the financial transaction represents the proceeds of some form of specified unlawful activity, knowing that the transaction is designed in whole or part to conceal or disguise the nature, the location, the source, the ownership, or the control of the proceeds of specified unlawful activity.

35. Likewise, Title 18, United States Code, Section 1960 makes it unlawful to engage in an unlicensed money transmitting business. An unlicensed money transmitting business is defined as one that affects interstate or foreign commerce in any manner or degree, is operated without an appropriate license in a state, whether or not the transmitter knew that the operation was required to be licensed, is not in compliance with the money transmitting business registration requirements under 31 U.S.C. § 5330, which requires that money transmitting businesses be registered with the Secretary of the Treasury, or otherwise involves the transportation or transmission of funds that are known by the transmitter to have been derived from a criminal offense, or are intended to be used to promote or support unlawful activity.

36. Accordingly, I submit that there is probable cause to support the issuance of a warrant to civilly and criminally seize:

> **All USDT held in the Target Address maintained by Tether Limited Incorporated identified on Attachment A,**

18

pursuant to Title 21, United States Code, Section 881(a)(6) (civil forfeiture of drug proceeds); Title 18, United States Code, Section 981(a)(1)(A) (civil forfeiture of property involved in money laundering and unlicensed money transmitting); Title 21, United States Code, Section 853 (criminal forfeiture of drug proceeds); and Title 18, United States Code, Section 982(a)(1) (criminal forfeiture of property involved in money laundering and unlicensed money transmitting).

37. As of November 22, 2024, 0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e (**Target Address)** has a current balance of 1,123,351.57698 USDT.

38. The Court has authority to issue seizure warrants for property located outside the Eastern District of Wisconsin, pursuant to Title 18, United States Code, Section 981(b)(3). Section 981(b)(3) provides that a seizure warrant may be issued by a judicial officer in any district in which a forfeiture action may be filed under Title 28, United States Code, Section 1355(b), "and may be executed in any district in which the property is found. . . ." Title 18 U.S.C. § 981(b)(3). In turn, Title 28, United States Code, section 1355(b) provides that a forfeiture action may be brought in any district where any of the underlying acts or omissions occurred upon which the forfeiture based.

19

**ATTACHMENT A**

Pursuant to this warrant, Tether shall provide the law enforcement officer/agency serving this document with the equivalent amount of USDT tokens that are currently associated with the virtual currency address referenced below (*i.e.*, all items of value, including 1,123,351.57698 USDT). Tether shall effectuate this process by (1) burning the USDT tokens currently associated with the virtual currency address referenced below and (2) reissuing the equivalent value of USDT tokens to a U.S. law enforcement-controlled virtual currency wallet. Tether shall provide reasonable assistance in implementing the terms of this seizure warrant and take no unreasonable action to frustrate its implementation.

**Target Address to Be Seized:** 0x1c1638e485b79d73df3ec98bd0ec60eddd9fdd4e